Case 11-0190, Brewer-Weiner v. Illinois Dept. of Financial and Professional Regulation Good morning, Your Honor. Jeffrey Strange, Appellant. Hall reset for the State. Okay. Proceed. Good morning, Your Honor. The State receives all its power, the Department receives all its power from the statute that the State Legislature has passed. In this case, the Department has added extra powers to itself and extra hurdles that a registrant has to pass in order to get their license back once they've been suspended. Dr. Weiner has been suspended for seven years in this case for failing to financially follow up with a consent decree. He applied to have his license back, and the Department imposed some of their own terms that are not part of the statute. They said he had to prove to me that he had been rehabilitated. That's not part of this act. It's part of the Medical Practice Act, but it's specifically not part of the Dental Act. The Department also took its time in adjudicating this case. The statute says that after the hearing officer issues his ruling, they shall within 60 days, the Dental Practice Board shall within 60 days issue its own findings. That didn't happen. They waited here nearly a year. And what does the statute say when that happens? It says that if the Dental Practice Board fails to take that action within the 60 days, then the director shall make his decision based on the finding of the administrative law judge. And what happens if the director doesn't do that? What does the statute say regarding that? It doesn't say anything. That's the problem. Is there any case law that says what happens when the director doesn't act pursuant to statute? No, it does not. And the dentist won before the ALJ, right? Yes. Did he resume practicing at that point? He was not allowed to because it doesn't become final. Then he won before the board. Yes. And did he resume practicing after that? No, he did not. But then the director overruled both, and that was pursuant to statute. That's his prerogative, right? Well, I don't think he can overrule him after 60 days because it says he shall make his finding based on the finding of the administrative law judge at that point. And he didn't do that. Basically, we believe the statute says that he has to go with what the administrative law judge said at that point. Well, let's figure out why. This is a case where he's trying to recover his dental license. He's been suspended, not revoked, but essentially what happened to him became a replication. Well, but the suspension, he was suspended and certain conditions were imposed that he had to comply with before he was entitled to get his license back. Did he comply with all those conditions? He did not comply with the Continuing Education Act because he was unable to do so. The administrative law judge looked at that. What about the financial aspects of those conditions? The financial aspects, he filed bankruptcy. And the bankruptcy does not discharge the requirement that he pay his fines. That's not discharged under the bankruptcy code. Did he pay the fines? He did not. So why isn't this the case where the director says, you know what, I think my staff didn't do enough to enforce the initial conditions of the suspension of the license, and therefore I'm going to overrule both? This is a case where he impermissibly punished him for not paying those fines that had been to the patients. What he was talking about was he says he didn't find that he didn't pay the fines. He found that he didn't repay the patients, and he used the bankruptcy to evade that. That's prohibited by 523 of the bankruptcy code. Did you get a ruling? Do you have any kind of ruling from the bankruptcy court saying that that is, in fact, outside the bounds of what a state agency can do in regulating the license that it issues? The United States Supreme Court has said that. Give me the case for that. I should know it off the top of my head. I can't imagine that the United States Supreme Court would be delving into these sort of issues that are so narrow and address only what a regulatory agency can do. And it certainly didn't involve the reinstatement of a license. You know, there may be a different situation if the state is seeking to take away a license in the first instance. There are many due process protections, but the burden is on your client to demonstrate that he's entitled to the reinstatement of his license, and it's a heavy burden. The section we're talking about in the bankruptcy code is 11 U.S.C. 523. That case came about where the state refused to give back, the 1971 where the state refused to give back a license to a person whose driver's license had been suspended for failure to pay a fine. And the Supreme Court found that you cannot, at that time that was a dischargeable debt, that you cannot withhold that license even though it had been paid. When you say at that time it was a dischargeable debt, you're saying that it no longer is? Fines are not dischargeable. So, in effect, the change in the bankruptcy laws has, in effect, undermined or, you know, made it or diminished the significance of that Supreme Court decision because certainly it's not a matter of constitutional law. It was a matter of statutory interpretation. Well, no, the 523 was enacted to basically codify that finding by the Supreme Court. When they amended the Bankruptcy Act into the bankruptcy code, that was actually codified that case, or codified that case. In this case, though, it's a little different, too. What was dischargeable here was his debt to those patients that he was ordered to repay. That was not a fine, and that is clearly dischargeable under the bankruptcy code. Let me ask you this. Was there an offer by your client to pay the fines by installment? Absolutely, and that was part of the administrative law judge's findings, and that we were to pay that, and that has all been agreed to. Now, as to the educational requirements, I mean, isn't that a reasonable requirement? Somebody hasn't been practicing dentistry for six or seven years to require them to take educational courses. We did, and we agreed to that. That was part of the administrative law judge's finding and part of the dental board's finding. In fact, they increased it. They also put some other requirements in there. I mean, first of all, you have to have a license to go to a lot of these dental classes. That's not in the briefs, so I don't know if I should even be arguing it, but you're bringing it up. There's a financial issue here, too. When someone hasn't been able to work in their field for seven years, these courses are not inexpensive. They're very, very expensive. You tell me on the one hand that he was willing to take the educational courses, and on the other hand you tell me he doesn't have the money to pay for them. Well, knowing that you're going to get your license back, his wife was working, and she was going to pay for those courses for him. He had worked as a dental consultant for the last several years. We're saying part of the thing, he never made more than $25,000 in those years, trying to show dentists how to advertise, doing advertising work, because he couldn't work as a dentist. And we waited three years to come back and apply to make sure that Mr. Weiner was ready to come back. The purpose of the Dental Practice Act is, this court found in the Kathin case, is to protect the public. We have to look at what's the purpose of this act. It's not to punish someone indefinitely for not paying some bills back to some patients. We're talking about $8,000 here and some fines. He's been out for seven years. And the purpose of the act is to make sure that people are qualified to practice dentistry. This is not about dentistry. This is about his ability to manage the financial aspects of his practice. So you don't think that professional people who commit wrongs should be punished? Well, I think that they should be punished, but I don't think they should basically get the death sentence here. I mean, we're talking about $8,000. And, you know, there was a reasonable dispute through that. He thought that he shouldn't give back all the money that they were asking for. There was a dispute of a couple of thousand dollars there. In retrospect, it was incredibly stupid. He should have just given back the money. Well, you know, once your license is suspended, you think you could argue about the money? I wasn't arguing about that. If you would have listened to me, I would have paid it back. So those are the issues. You know, if we look at the purpose of the Dental Practice Act and the severity of the punishment here, it's way out of line with what's happened to other dentists. And, you know, yes, he can do all these things. So you're telling us it's too harsh? Too harsh. Okay. Too harsh. It's a death penalty for $8,000. Well, there's some case laws, cases that talk about harsh. I haven't found any losing licenses that talk about the death penalty. I'm talking about the literal death penalty. And so that's my conclusion. Okay. Thank you. We'll give you a couple minutes. Thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is Paul Resett. I'm an Assistant Attorney General for the State of Illinois, and I represent the Department of Financial and Professional Regulation. So why was there such a lengthy delay between those steps that had to be followed? We don't know from the record why the dental board took more than the 60 days it was supposed to take. It ended up taking about nine months. But the issue has been framed as a due process violation, and just because you violate a time frame in a state statute doesn't necessarily mean there's a due process violation. We talked about the Morgan II case in our brief, which is a recent case from this court, where there was a similar situation where the board that regulates psychiatrists did not meet the 60-day time frame, and the person was making the same argument that there was a due process violation, and this court said no, it's not necessarily a due process violation. So our position is that simply because the dental board did not meet that 60-day time frame does not mean that he automatically gets his license back, in part because the statute itself says what the consequence will be if it doesn't. It says that the division director shall then make his decision only looking at what the ALJ recommended, not looking at what the dental board recommended, and sometimes it could be different, but he's still not bound by what the ALJ or the dental board recommended. But doesn't he also have to issue a decision within 60 days, and he didn't comply with that? Well, I'm not sure about that. They've never argued that the director did not act in a timely fashion. They just argued that the dental board did not. So these are just recommendations. But you know what the statute says, and does the statute say that the director, if the board doesn't act within 60 days, he must act within those 60 days? No, this is Section 30 of the Dental Practice Act, and it just talks about the board having the 60-day time frame. There's no time frame specified for the director to act. Let me ask you this. If the board doesn't follow the law, how can they expect the dentist to follow the law? Well, actually, the dental board ruled in his favor, which is why I think he didn't make an issue of it. Once it went past the 60 days, he was waiting to see if they would rule in his favor and then decide whether to make an issue of it. And it was only after the director did not agree with the dental board that he suddenly took issue with them not meeting that 60-day time frame. Well, how about the harshness of this? Here's a man who's lost his license for a long period of time, and you don't want to give it back to him at all? Right, but this was an indefinite suspension, and in those cases the key to getting the suspension lifted is really in the hands of the dentist. Here he did nothing other than just let time pass. He had agreed. There had been an original complaint where there were very serious charges against him, including gross malpractice, repeated malpractice, people having veneers fall off a couple days after he put them on, letting dental assistants do the work of dentists, not responding to patient abandonment issues where he would not respond to phone calls where patients were suffering. So in addition to this problem where he would take money up front and not do the work and not give a refund either, so there was a consent order entered, which he agreed to, which resolved those allegations, and as part of that consent order he promised that he would give refunds back to people if he didn't do the work, that he would complete 100 additional hours of continuing education because he had these problems with the malpractice and the incompetence, which he never took any of those hours, and then also that he would pay a fine to the department, which he paid part of but not all of. And then within six months of signing that consent order, he was doing the same thing with patients of not doing the work or giving them their money back. So his license was indefinitely suspended, and then after a few years he came back and petitioned for restoration, but during those years he was selling advertising, but he didn't take any of those courses, and until today he's never said that he couldn't afford to take them, so that's a forfeited argument.  He's just sent me that representation in court. I'm not sure if that's true. I would think dental students take these courses before their dentists. I mean, this is rudimentary stuff about how to do a veneer, how to do... In any event, he didn't take any courses. Correct. Let me ask you this regarding our review of the director's decision. Do you claim in your brief that it's subject to an abusive discretion standard and the dentist is arguing that it's a manifest way to the evidence standard? Why would it be an abusive discretion standard if we're talking about findings of fact underlying the decision? Well, because the statute that gives the power for the director to restore a license says that he may, so by the nature of that word may, we claim it's discretionary, but also I don't see how you can talk about a manifest way to the evidence analysis here where there was really no evidence put on. Dr. Weiner testified... Well, it depends on whose burden it is. It is his burden. If it's his burden, there is no manifest way to the evidence in his favor. Well, when you're seeking restoration, you have to show by a preponderance of the evidence that you're fit for restoration, that you can be trusted to do this work with these vulnerable patients, and he presented no witnesses other than himself, presented no documentary evidence, and his position was basically, I think I should get my license back. You know, I'll do a good job. You know, he was very evasive in his questioning about the financial matters. He claimed to not know... So how do you explain the AOJ's decision and then the board's decision, both of which looked upon him favorably? Well, they're not really polar opposites. I mean, the AOJ and the dental board did recommend restoration, but with many, many conditions, including that he would finally live up to these things that he agreed to, including the continuing education... So why would they give him basically a second chance to live up to the conditions that he didn't live up to the first time? Well, I think that the director wants to see him do something first. I mean, during those four years, he did nothing, and so we're not just going to take him at his word that he'll do it if we give him the license back. We want to see something done before it would be considered. So unless the court has further questions, we would ask that you affirm. Okay, thank you. Thank you. Just a couple of quick points. The state likes to argue that the Morgan II case is analogous to this case. It's a completely different statute. In that statute, it says they may issue their opinion within 60 days. Our statute says shall. It's a completely different standard. Then in regard to the dental practice, so Morgan II is really not exactly different. Do you know which statute was passed first, whether it was the medical or the dental? If it was the medical, that was passed first. The dental use of the word shall may have significance. I do not know. If it's the other way around. I think the dental act was afterwards. But I can't remember. They're revised so many times we don't know. Yeah, you have to really spend time. The other thing is that if you look at Section 31 of the Dental Practice Act, it doesn't say anything about rehabilitation. It just says upon written recommendation of the board, you should get your license back. We got that. Then it says, the Dental Practice Act in Section 25-2 says that only qualified persons be permitted to practice dentistry in the state of Illinois. We have that, too, because the board found we were qualified. There's no basis to support what the director did here. He didn't give him his license back because he filed bankruptcy and tried to not pay his patients back. He didn't pay the fine and he didn't, I'm drawing a blank, but there's a third one. You're not from Texas, are you? No. George, no, I'm not George Bush. No, not George Bush, Rick Perry. Rick Perry, right. So that's the argument, I think. Thank you very much. Thank you. We'll take this case under advisement and we'll have a short recess so we can switch panels.